# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DEVYN ELIJAH SPRINGER,

     *Plaintiff,*

v.

UNITED STATES OF AMERICA,

     *Defendant.*

Case No. 8:25-cv-      -

---

## TIME-SENSITIVE MOTION FOR RETURN OF ELECTRONIC DEVICES UNLAWFULLY SEIZED BY CBP, AND FOR RETURN OF ANY CONTENT OBTAINED THEREFROM, PURSUANT TO FED. R. CRIM. P. 41(g), AND <u>REQUEST FOR EXPEDITED HEARING</u>

Pursuant to Rule 41(g)[1] of the Federal Rules of Criminal Procedure, activist-journalist Devyn Elijah Springer ("Plaintiff") files this Motion for the Return of Electronic Devices and any and all information and data copied, reproduced, or retained therefrom that was unlawfully seized on April 8, 2025. Because the items

---

[1] Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g) (2005).

were seized, without warrant, and are retained in violation of federal law, and their continued seizure has aggrieved Plaintiff, immediate return of all the seized items and all copies thereof is necessary under Rule 41(g).

Given the emergent nature of this motion, the lack of any identifiable pending criminal investigation or charges or civil action against Plaintiff or their devices, and the fact that this is an initial filing, undersigned counsel was not able to confer with opposing counsel under Local Rule 3.01(g) regarding their position on the motion.

## TIMES-SENSITIVE NATURE OF MOTION AND RELIEF SOUGHT

Pursuant to Local Rule 3.01(e), Plaintiff files this motion as time-sensitive and seeks expedited consideration and relief given the exigent and unforeseen circumstances giving rise to this motion. As described *infra*, Plaintiff is suffering acute, ongoing harm both in the form of the government's egregious violations of Plaintiff's First Amendment and other constitutional and statutory rights underlying the seizure and detention of Plaintiff's electronic devices, and the ongoing, unlawful deprivation of their phone and computer which serve as Plaintiff's primary means of communication with loved ones and coworkers, gainful employment and freelance work, artistic and political expression, and are also critical to Plaintiff's general safety and wellbeing.

## FACTUAL BACKGROUND[2]

Plaintiff Devyn Elijah Springer, who goes by the pen name Musa, is a Black, queer journalist, documentary filmmaker, cultural worker, and political activist who lives in the Atlanta area. They[3] are a United States citizen. Plaintiff has written extensively in public online forums about topics including racial justice and Black grassroots activism, queer identity, prison conditions, repression of dissent, Palestinian human rights, and the history of anti-imperial and anti-colonial struggles around the world. On many occasions in their over ten-year career of activism and journalism, Plaintiff has made statements critical of U.S. government officials and policies. In addition to their freelance journalism and cultural work, they are employed at a Georgia nonprofit organization dedicated to reproductive justice. Plaintiff is a peaceful individual with no criminal history. To Plaintiff's knowledge, they are not the subject of any pending criminal investigation and have no pending criminal charges.  There also is no search or arrest warrant related to the devices.

On Tuesday, April 8, 2025, Plaintiff was traveling home to Atlanta from a visit to Cuba. Plaintiff had traveled to Cuba many times previously. Prior to Cuba, Plaintiff had also spent several days in Canada. Plaintiff was outside of the United

---

[2] Plaintiff reserves the right to supplement the record with additional evidence in support of the facts included in this motion.
[3] Plaintiff uses they/them pronouns.

States for nine days in total. While in Cuba, Plaintiff visited friends, traveled around the country, and enjoyed natural scenery.

Plaintiff departed Havana, Cuba, on Southwest Airlines Flight Number 3953 on the morning of April 8 and arrived at the Tampa International Airport at approximately 2:00 PM, where they planned to board a connecting flight home to Atlanta, Georgia, which was scheduled to depart at 4:20 PM. Plaintiff was carrying two suitcases and a backpack.

When Plaintiff arrived at the primary inspection area for U.S. Customs and Border Protection ("CBP"), they approached the agent at the desk and handed him their U.S. passport, as they had done many times before when returning from travel abroad. The agent's reaction upon looking at Plaintiff's face gave Plaintiff the impression that the agent recognized them. The agent asked Plaintiff several questions about their travel to Cuba, to which Plaintiff responded, as they had in the past, that they had visited Cuba "to support the Cuban people." The agent then began to probe Plaintiff about their political associations, travel companions and arrangements, and what specific actions or work they had engaged in while in Cuba. Having traveled to Cuba many times in the past, Plaintiff was taken aback by this questioning, which extended far beyond the relatively standard set of questions they were used to being asked when reentering the United States.

At around 2:15 PM, the agent took Plaintiff's passport and instructed Plaintiff to follow him to the secondary inspection area. The secondary inspection area contained a holding area with glass walls which made the entire area visible, where Plaintiff was told to wait. The area also contained metal tables for baggage inspection, and standing desks with computers where CBP agents were engaged in questioning detained individuals and performing tasks on the computers.

Over the course of the next three hours, multiple CBP agents detained and interrogated Plaintiff, including at least one agent from a counterterrorism unit. Near the beginning of Plaintiff's detention, they overheard one CBP agent state to another agent, in reference to Plaintiff, that "you're gonna be here for a while" because "your guy's not going anywhere anytime soon." The agents moved Plaintiff around to several different locations within the secondary inspection area during this time, such that some of the interrogations took place at the standing desk area, others took place in what appeared to be a holding cell, and others took place within a small office room with a desk. Following each round of questioning Plaintiff was returned back to the holding area. Plaintiff was subjected to two pat-downs during the interrogation, including an invasive pat-down of their groin area. At one point near the beginning of the interrogations, Plaintiff asserted their right to speak to a lawyer. An agent stated to Plaintiff that they did not have a right to speak to a lawyer.

Several CBP agents aggressively questioned Plaintiff about their connections to specific individuals, including prominent non-U.S. citizen scholars and activists. The agents interrogated Plaintiff about these individuals' whereabouts, their citizenship, Plaintiff's connections to them, and whether these individuals had accompanied Plaintiff on their travels.

A CBP counterterrorism agent interrogated Plaintiff about whether they had ever traveled to the Middle East or North Africa. Plaintiff responded that they had never been to the Middle East, but had once traveled to Tunisia. The agent asked who paid for the trip, who had accompanied Plaintiff, and if Plaintiff had received any military training there. Plaintiff explained that it was a spiritual trip and that they have never received any sort of military training anywhere in the world. The same agent also questioned Plaintiff whether they worked with Communist Party organizations in Cuba, to which they responded they had not.

Approximately one hour into the detention and interrogation,[4] CBP agents searched Plaintiff's suitcases and bookbag at a metal table that ran perpendicular to the standing desk area. Agents also requested that Plaintiff remove everything from their pockets—including their phone—and place those items on the table in front of them. Plaintiff complied with that request. Agents recovered a package of

---

[4] The holding area had no visible clocks and the use of cellular devices was prohibited, so Plaintiff does not know the exact times of the events described herein.

Cuban cigars from one of Plaintiff's suitcases, which they seized and destroyed. The agents removed Plaintiff's laptop computer from the bookbag. They also removed three notebooks from Plaintiff's bookbag and read through the pages. The notebooks included Plaintiff's professional and personal research and other writings. One agent asked Plaintiff, "are you a student?," based on the contents of the notebooks; another stated he "found something" on one page of a notebook and showed it to another agent.

While agents were searching Plaintiff's luggage, Plaintiff could see the computer monitor screen that one of the agents at the standing desk was viewing. On the screen Plaintiff could see agents scrolling through some of the public articles and posts Plaintiff had written. At one point, Plaintiff believes they overheard one of the agents speaking about them and mentioned the phrase "abortion for Palestine"—likely a reference to a combination of their employment and public writings.

Approximately two hours into the interrogation, while being detained in one of the holding rooms, Plaintiff asked the agents if they were compelled to answer the agents' questions. The agents responded that Plaintiff was not legally compelled to do so, got visibly upset, and returned Plaintiff again to the holding cell. When they came back into the room, they told Plaintiff that they were seizing all of Plaintiff's electronic devices. In addition to the two agents who had been

interrogating Plaintiff for the past approximately two hours, a third agent came over. All three agents demanded that Plaintiff provide the passwords for the devices. Plaintiff declined to provide the passwords. The agents said, "we're going to get into your devices either way, and it will only take longer you don't cooperate, so you might as well provide the passwords" and "if you provide the passwords you will get your stuff back in two to five days, if not it could be two to three weeks." The agents told Plaintiff to turn on devices, which were powered down. Plaintiff declined to turn on the devices. The agents were visibly upset.

The agents took Plaintiff's phone and laptop and left the holding room. Through the glass wall of the room, Plaintiff could see the agents handling the devices at the computers, and walking back and forth to various offices and rooms in the secondary inspection area with the devices in hand. After approximately 30 to 60 minutes elapsed, the agents returned to the holding room, told Plaintiff they were free to go, and gave Plaintiff a property receipt for their electronic devices, a true copy of which is attached hereto as **Exhibit A**.

At this point, it was approximately 5:30pm, and Plaintiff had missed their connecting flight and the last flight of the day to Atlanta. As a result, Plaintiff had no phone or laptop with which to contact family or friends, had limited options to coordinate another flight home, had to pay for a hotel room to spend the night in Tampa, and had to rent a car to drive home to the Atlanta area the next day.

The seized devices are Plaintiff's primary phone and computer for both work and personal matters. As such, the devices include materials critical to Plaintiff's work, including article drafts, research documents, and audio and video editing software. Plaintiff has missed deadlines for video production work due to their inability to access video footage saved on the seized computer. The devices also contain Plaintiff's personal intellectual property, including manuscripts for Plaintiff's books and writings and copyrighted photography files. Plaintiff worries about the safety of anonymous journalistic sources for articles and investigative writings, whose information are located on the devices and whose confidential communications are cached in the devices' data. As it relates to Plaintiff's job at ARC-Southeast, sensitive information related to reproductive care of clients, which falls under HIPAA regulations and protections, may be contained on the devices.

On April 14, 2025, at approximately 1:50 p.m. EST, undersigned counsel attempted to contact CBP counsel to object to the search and seizure of Plaintiff's electronic devices and to invoke the five-day limit under CBP policy.[5] The call was

---

[5] *See* CBP Directive No. 3340-049A, Border Search of Electronic Devices § 5.4.1 (Jan. 4, 2018), *available at* https://www.cbp.gov/sites/default/files/assets/documents/2018-Jan/CBP-Directive-3340-049A-Border-Search-of-Electronic-Media-Compliant.pdf [hereinafter "CBP Electronic Device Search Directive"] ("Unless extenuating circumstances exist, the detention of devices ordinarily should not exceed five (5) days.").

accepted by Officer Carroll, who indicated he would contact the duty agent for guidance, and that the undersigned counsel would be contacted once that occurred. Officer Carroll inquired whether the undersigned counsel was making a request for return of the property or inquiring when the property would be received. Counsel answered that it was both a request for return of the property and an inquiry as to when it would be received. Counsel also provided Officer Carrol with the CPB Receipt Number for plaintiff's property. However, following this phone conversation, no CBP official has made any attempt to contact the undersigned.

At approximately 11:15 a.m. on today's date, the undersigned counsel dialed Officer Carroll at the number he provided. No one answered. Instead, a recording indicated that the number belonged instead to Officer Brown and provided three additional alternative numbers. Counsel left a message on the original number, and then attempted all three additional numbers, which according to the recorded messages, belonged to Officers King, Shannon, and another Brown. The undersigned counsel left the same message on each of these extensions. No official at CBP has attempted to contact the undersigned counsel. As of the time of filing this motion, the devices have not yet been returned; no return calls have been attempted, despite the multiple messages described above; and Plaintiff continues to suffer harm from the government's continued seizure of

his electronic devices necessary, which are indispensable to their personal life as well as professional and community work.

## ARGUMENT

### I.    Plaintiff is Entitled to Immediate Return of the Seized Property Under Rule 41(g)

A motion for return of property under Rule 41(g) made outside of pending criminal proceedings is heard in equity. *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005). The Fifth Circuit instructs courts to consider four factors when ruling on 41(g) motions:

> (1) whether the government displayed a callous disregard for the plaintiff's constitutional rights; (2) whether the plaintiff has an individual interest in and need for the material whose return he seeks; (3) whether the plaintiff would be irreparably injured by denial of the return of the property; and (4) whether the plaintiff has an adequate remedy at law for the redress of his grievance.

*Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022) (cleaned up) (quoting *Richey v. Smith*, 515 F.2d 1239, 1243–44 (5th Cir. 1975)). Plaintiff meets each of these factors. Therefore, even if the initial seizure of Plaintiff's electronic devices were lawful—which it was not—Plaintiff is still entitled to return of their seized property under Rule 41(g) because they are "aggrieved by the government's continued possession of it." *See* Fed. R. Crim. Pr. 41(g), Advisory Committee Note to the 1989 Amendments.

### A. The government is exhibiting an exceptionally callous disregard for Plaintiff's constitutional rights.

The first *Richey* factor—"whether the government displayed a callous disregard for the plaintiff's constitutional rights"—is the most important one. *See Trump*, 54 F.4th at 698 ("Whether that sort of violation has occurred is the 'foremost consideration' for a court when deciding whether it may exercise its equitable jurisdiction in this context." (quoting *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977)). A plaintiff must come forward with "an accurate allegation" to satisfy this element. *Id.* (citation and internal quotation marks omitted). The incursions into privacy that accompany the execution of a typical search warrant do not meet this test. *Id.* Here, the government displayed an exceptionally callous disregard for Plaintiff's rights under the First, Fourth, and Fifth Amendments to the U.S. Constitution.

The government's seizure, ongoing detention, and potential search of Plaintiff's devices infringe upon Plaintiff's core First Amendment rights of free speech and expression. Adverse government action in retaliation for protected speech violates the First Amendment. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019); *see also Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (noting that freedom of speech extends to "expressive conduct" meant to convey a particular message). The First Amendment, along with the Due Process Clause, also protects the "right to expressive association." *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1053 (11th

Cir. 2022) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)). Here, by seizing and detaining Plaintiff's electronic devices based on their past public statements and particular views expressed therein, or their actual or perceived associations with other high-profile activists, scholars, and writers who have been critical of U.S. government actions and policies, the government violated Plaintiff's First Amendment rights.

The warrantless seizure of the devices without probable cause, or even reasonable suspicion, also violates Plaintiff's Fourth Amendment rights. *See United States v. Babcock*, 924 F.3d 1180 (11th Cir. 2019) (holding that two-day detention of defendant's cell phone was full-blown seizure that required probable cause). Almost a week has already gone by since CBP seized Plaintiff's electronic devices. Here, CBP did not obtain a warrant for the devices, and unlike the Eleventh Circuit's reference to government conduct in $557,933.89, More or Less, in U.S. Funds, did not (and could not) articulate a reasonable suspicion–much less any circumstances demonstrating probable cause– to justify the multi-day and ongoing seizure and possible search.

Critically, there appears to be no ongoing criminal investigation or criminal charges against Plaintiff. CBP agents did not obtain a warrant to seize or search the devices. Instead, CBP seized the devices after extensively interrogating Plaintiff about their political and personal associations, and about their entirely

lawful conduct during recent and past travels abroad. Plaintiff also witnessed CBP agents viewing and commenting about their public writings about topics of immense public concern.

Moreover, the government cannot possibly claim any credible national security concern to justify the warrantless seizure and potential search of Plaintiff's devices, which contain sensitive personal and professional information, protected journalistic content, intellectual property, and records of communications with individuals and networks with whom Plaintiff has the right to freely associate.

The extended detention of the devices and any advanced search CBP may perform on them also violates CBP's own policy, which requires reasonable suspicion or a "national security concern" to conduct an advanced search (the only type of search available since the devices were powered down and password-protected), and only permits CBP to detain electronic devices for a "brief, reasonable period" for the purposes of conducting a search and determining the admissibility of any evidence obtained. And the detention should last no longer than five days unless "extenuating circumstances" are present. *See* CBP Electronic Device Search Directive, *supra* note 5, §§ 5.1.4, 5.4.1. As explained *infra*, the seizure and detention of the devices also runs afoul of the Privacy Protection Act.

      **B. Plaintiff has an undisputed interest in and an acute, ongoing need for the seized property, and is suffering irreparable harm as a result of the seizure.**

The second and third *Richey* factor require courts to consider the laptop and phone seized from Plaintiff, which undisputedly belong to them. The devices were Plaintiff's only phone and computer, and as such, are essential to their communications with family, friends, coworkers, and clients, and necessary for their employment, freelance work, artistic pursuits, and general safety and wellbeing. Moreover, Plaintiff is a journalist and documentarian whose devices contain work product, including materials for a current project, and may contain protected journalistic source and confidential patient information. Ongoing separation from the devices is seriously impeding Plaintiff's normal, daily routine and life.

That Plaintiff was subjected to a baseless search and seizure unconnected to any pending or forthcoming criminal case distinguishes this situation from pre-indictment cases where the potential irreparable harm is primarily related to future prosecution. Compare *Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *8 (11th Cir. Sept. 21, 2022) (acknowledging the stigma of future prosecution but finding that it did not satisfy the third *Richey* factor). Plaintiff here is not simply experiencing the reasonable consequences of criminal investigation. Rather, Plaintiff's constitutional rights were violated, *supra* Section I.B, and such injury from these violations continues as long as the government remains in

possession of the phone and laptop or any copies of information obtained therefrom.

Plaintiff clearly declined CBP agents' aggressive requests to unlock the phone or provide the passwords so that CBP could access and search it, as was Plaintiff's constitutional right. Any search of the contents of the device would occur–or already have occurred—without a warrant or Plaintiff's consent, in further violation of Plaintiff's constitutional rights. Similarly, retention by the government of copies of any sensitive and confidential content on the illegally seized phone would irreparably harm Plaintiff.

Plaintiff's situation could not be more different than that of the movant in *United States v. Rehaif*, No. 6:16-CR-3-ORL-28GJK, 2017 WL 1435964 (M.D. Fla. Apr. 4, 2017), where the Middle District of Florida found that there was no evidence that the movant would suffer irreparable harm if cell phones were not returned. There, Mr. Rehaif had made several admissions to federal law enforcement agents, including unlawful conduct related to firearms; consented to a search of his hotel room, cell phones, and storage facility; was subsequently criminally indicted and found guilty by a jury; and filed the motion for return of the phones while incarcerated. *Id*. at *1.

Conversely, here, Plaintiff was stopped and searched without warrant; Plaintiff asked about the right to an attorney early on, declined to voluntarily

consent to search the phone or laptop, and declined to voluntarily give the passwords to the phone and laptop. Plaintiff is suffering ongoing harms, including missed work deadlines, inability to access files and software necessary to their work, and ongoing worries about the potential exposure of their own and others' protected (and lawful) information that may be contained on the devices.

### C. Plaintiff has no adequate remedy at law.

The fourth *Richey* factor is whether the movant "has an adequate remedy at law for the redress of his grievance." *Richey,* 515 F.2d at 1244. Federal district courts have declined to grant motions to return seized property where forfeiture proceedings have been initiated by the government or the window for doing so has not closed. *See Patel v. United States*, No. 9:19-MC-81181-WM, 2019 WL 4251269, at *3 (S.D. Fla. Sept. 9, 2019); *Matter of Seizure of Merchants & Marine Bank Accts. XXXXX & XXXXX*, No. 1:19MC371-LG-JCG, 2019 WL 3558181, at *3 (S.D. Miss. Aug. 4, 2019), *aff'd sub nom. Alvix Lab'ys, L.L.C. v. United States*, 795 F. App'x 931 (5th Cir. 2020).

Neither applies to the instant case. There are no pending criminal proceedings against Plaintiff. Nor was the seizure made pursuant to a criminal search warrant, making criminal forfeiture proceedings unavailable. Nor have any of the requirements under 18 U.S.C. § 981(b) been met such that the seizure could possibly be a civil forfeiture making civil forfeiture proceedings available. The

property was not seized by the Attorney General, the Secretary of Treasury, or the Postal Service, as required by 18 U.S.C. § 981(b)(1); pursuant to a warrant, as required by 18 U.S.C. § 981(b)(2); or under any of the exceptions to the warrant requirement under 18 U.S.C. § 981(b)(2) subsections.

No other remedy at law exists. This motion is one of the "exceptional cases where equity demands intervention," *Matter of $67,470.00*, 901 F.2d 1540, 1544 (11th Cir, 1990), and the absence of the requested relief would be "a gross constitutional violation" that "leave[s] the subject of a search without recourse," *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943).

## II.  The Privacy Protection Act Further Protects Plaintiff Against the Unlawful Search and Seizure of Their Electronic Devices

Seizures of the work product of journalists and related groups and their devices is a "prior restraint" on dissemination and interferes with their protected First Amendment rights. The Privacy Protection Act ("the PPA"), 42 USC 2000aa(a)(1), provides protection against this prior restraint. The PPA prohibits the government from seeking a warrant "to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication . . . ," much less conducting a warrantless search and seizure without consent–as the government did here. Pursuant to the PPA, the search and seizure of Plaintiff's phone and laptop without a warrant or "probable

cause to believe the person possessing such materials has committed or is committing [a] criminal offense to which the materials relate" violates their rights.

In *Madaio v. Fed. Bureau of Investigation*, the federal district court found that the FBI agents had not violated the PPA because Madaio consented to the warrantless search, admitted to criminal activity, and the agents found evidence of that criminal activity on Madaio's computers before seizing them. *Madaio v. Fed. Bureau of Investigation*, No. V-06-BE-00904-S-KOB, 2008 WL 11392887, at *7 (N.D. Ala. Mar. 31, 2008), *aff'd sub nom. Madaio v. Roden*, 375 F. App'x 921 (11th Cir. 2010), and *aff'd sub nom. Madaio v. Roden*, 375 F. App'x 921 (11th Cir. 2010). Thus, Madaio fell into the "suspect exception" of the PPA under subsection (b)(1) of the Act, which permits certain warrantless searches. None of the same circumstances exist here.

While the PPA does not prohibit the government from investigating crimes, there is no evidence that Plaintiff was detained by CBP in connection to any criminal investigation or falls under the suspect exception to the PPA; nor does Plaintiff have a criminal record. Instead, CBP officials held Plaintiff for hours while performing online searches about their public writing, work, and other activities and asking invasive questions about Plaintiff and other academic scholars who write publicly.

In passing the PPA, "Congress expressed its concern regarding the interference with privacy interests, not property interests, that arose out of the search and seizure of evidence belonging to those not under investigation." *Henriquez v. Georgia Dep't of Revenue*, No. 21-12567, 2023 WL 4624473, at *10 (11th Cir. July 19, 2023) (quoting S. Rep. No. 96-874, at 4–5 (1980)). This concern is acute here, where Plaintiff was aggressively questioned about their connections to specific individuals, including prominent non-U.S. citizen scholars and activists. The questioning and device seizure that Plaintiff endured falls squarely within the parameters of what the PPA was passed to prevent.

## <u>CONCLUSION</u>

Based on the foregoing, this Court should grant Plaintiffs' Motion and order the government to immediately return Plaintiff's electronic devices and all information and data copied, reproduced, or retained therefrom. If the Court determines that a hearing is necessary or would aid the Court's determination, Plaintiff respectfully requests this Court to schedule an expedited hearing at the earliest possible date.

Dated: April 15, 2025            Respectfully submitted,

                                */s/ Matthew Farmer*
                                Matthew Farmer
                                Farmer & Fitzgerald, P.A.
                                800 W. De Leon St.

Tampa, FL  33606
(813) 928-1131
Mattfarmer1@aol.com

Jessica Myers Vosburgh*
Center for Constitutional Rights
P.O. Box 486
Birmingham, AL 35201
(212) 614-6492
jvosburgh@ccrjustice.org

Kayla I. Vinson*
Emily C.R. Early*
Center for Constitutional Rights
666 Broadway, 7th floor
New York, NY 10012
kvinson@ccrjsutice.org
eearly@ccrjustice.org

*Pro hac vice application forthcoming

Counsel for Devyn Elijah Springer